# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

CIVIL ACTION NO: 4:17-CV-00137

CSX TRANSPORATION, INC.                                          PLAINTIFF

V.

CITY OF SEBREE, KENTUCKY                                         DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter came before the Court on Plaintiff's Motion for Preliminary Injunction [DN 3]. Pursuant to Fed. R. Civ. P. 65(a)(2), the trial on the merits was advanced and consolidated with the hearing on the injunction motion. The hearing took place on March 1, 2018. The parties have filed post-trial briefs and the matter is ripe for decision

### I. BACKGROUND

The Plaintiff CSX Transportation ("CSXT") operates a rail line that runs through the City of Sebree, Kentucky (the "City"). The rail line crosses six city streets. The grade of these crossings has been an issue with the City for some time.

In May 1966, the City passed an ordinance (the "1966 Ordinance") prohibiting the Louisville and Nashville Railroad (CSXT's predecessor, "L&N") from altering the grade of the railroad tracks at any street crossing in the City without first obtaining approval from the City Council. Then, in 1979, when the City denied permission to L&N to conduct track maintenance which would raise the height of the crossings, L&N filed a lawsuit against the City in Webster Circuit Court. The Webster Circuit Court enjoined L&N from performing any work that would result in raising the grade of the crossings in violation of the 1966 Ordinance. Ultimately, L&N and the City entered into an Agreed Order (the "1979 Agreed Order") in which L&N promised it

would not raise the level of the tracks at Dixon Street and that it would only raise the tracks at Main Street no more than 0.4 feet.

More recently, in 2013, CSXT sought to perform track maintenance that would require raising the elevation of the tracks at certain street crossings. Because CSXT did not first seek and obtain approval from the Sebree City Council, City officials stopped the work. After a dispute involving both railroad police and City police officers, CSXT chose "to undertake alternative minimal maintenance that did not require raising the tracks." (Mot. for Prelim. Inj. [DN 3] at 3.)

The current dispute arose in August 2017, when CSXT gave notice to the City of its intent to conduct track maintenance that would result in raising the height of the tracks at four street crossings within the City. On October 2, 2017, the City Council denied CSXT's request. Shortly after, on October 11, 2017, CSXT filed this lawsuit. In its Complaint, CSXT seeks a "permanent injunction requiring that the City refrain from any enforcement of the 1966 Ordinance or the 1979 Agreed Order or the undertaking of any other municipal or state law action which would seek to prevent CSXT from raising the tracks on the Railroad Property or otherwise interfere with CSXT railroad operations." (Compl. [DN 1] at 10.) That same day, CSXT filed a Motion for Preliminary Injunction which asked the Court to "immediately prohibit the City from taking any action to enforce either the 1966 Ordinance or the 1979 Agreed Order or otherwise interfere with CSXT's railroad operations." (Mot. for Prelim. Inj. at 11.)

The matter was tried on March 1, 2018, and testimony was heard. Afterwards, both parties briefed their positions on factual and legal issues.

## II. DISCUSSION

The City of Sebree argues that both the 1966 Ordinance and the 1979 Agreed Order prohibit the railroad from raising the height of the railroad tracks without express authority from the City to do so. CSXT argues that both the 1966 Ordinance and the 1979 Agreed Order are preempted by two different federal statutes: the Interstate Commerce Commission Termination Act and the Federal Railroad Safety Act.

### 1. 1966 Ordinance

In 1966, the City of Sebree passed a local ordinance that required pre-approval by the City of any change in grade made by the L&N Railroad at any of the street crossings in the City. Violators are subject to a fine of not less than $50.00 per day until the unapproved change is corrected.

CSXT is the successor to L&N in the operation of the rail line which passes through Sebree. CSXT argues that this 1966 Ordinance is preempted by federal law. In 1995, Congress passed the Interstate Commerce Commission Termination Act ("ICCTA") in an effort to deregulate the railroad industry. Within the provisions of the ICCTA, a preemption section states, "Except as provided otherwise in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). Other courts have noted that "it is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations." *CSX Transp. Inc. v. City of Plymouth*, 92 F. Supp. 2d 643, 658 (E.D. Mich. 2000) (quoting *Soo Line R.R. Co. v. Minneapolis*, 38 F. Supp. 2d 1096, 1099 (D. Minn. 1998)).[1]

---

[1] The City argues that the ICCTA does not apply retroactively, however, the purpose of the act could only be achieved by application of its preemptive effect to existing state and local laws regulating railroad transportation.

In *Texas Central Business Lines Corporation v. City of Midlothian*, the Fifth Circuit reviewed a municipal statute much like the 1966 Ordinance. 669 F.3d 525 (5th Cir. 2012). A Texas town passed a grading ordinance setting a maximum slope for rail embankments and roads. *Id.* at 529. The Fifth Circuit found that this grading ordinance was preempted because it had the "effect of managing the economic decisions" of the railroad company in the context of transportation covered under the ICCTA. *Id.* at 534. "[S]tate and local law cannot govern a railroad's decisions in the economic realm." *Id.* at 533 (quoting *Elam v. Kansas City So. Ry. Co.*, 635 F.3d 796, 807 (5th Cir. 2011) (internal quotation marks omitted).

Here too, the Court finds that the 1966 Ordinance is preempted. There is no dispute that the rail lines must be maintained. The ballast is fouled. The dispute lies in the method to be used to achieve proper maintenance of the tracks. CSXT proposes to lift and surface the rails to achieve proper maintenance. This method will raise the grade of the crossings, and the City, understandably, objects to that result. The City argues that undercutting is a better method to fix the problem of fouled ballast and it would not increase the height of the rail lines at the crossings. Although CSXT disputes that undercutting is a better method of maintenance, the Court finds from the testimony that undercutting is a more extensive operation, and a more expensive one.

The 1966 Ordinance, if applied today to prevent CSXT from maintaining its rail lines in the manner in which it deems appropriate, is precisely the type of local regulation which the ICCTA sought to eliminate. The ordinance essentially allows the City to restrict how CSXT manages, constructs, maintains and operates its rail line. This is not permitted.

## 2. 1979 Agreed Order

The City also argues that an agreed order that was entered as a part of an earlier dispute should prevent CSXT from raising the railroad tracks. In 1979, when the City was sued by L&N, in order to settle that lawsuit, the parties entered into the 1979 Agreed Order. The 1979 Agreed Order states that L&N will not raise the level of the tracks at Dixon Street and that it would only raise the tracks at Main Street no more than 0.4 feet. The 1979 Agreed Order does not reference any of the other street crossings.

The City argues that CSXT cannot raise any railroad tracks within the City pursuant to the 1979 Agreed Order. The City also argues that such private contractual agreements are exempt from federal preemption. CSXT responds by pointing out that it is not a party to the 1979 Agreed Order, which was entered by its predecessor, L&N. In addition, CSXT argues that although the 1979 Agreed Order may have once prohibited it from raising the tracks at certain crossings, those prohibitions are no longer relevant since the ICCTA has since gone into effect to preempt state and local regulation of the railroads.

The ICCTA vested exclusive jurisdiction to the Surface Transportation Board ("STB" or the "Board") over railroad operations. 49 U.S.C. § 10501(b). The STB has stated, "While the Board encourages privately negotiated agreements, any contractual restrictions that unreasonably interfere with common carrier operations are deemed void as contrary to public policy." *R.R. Ventures*, 2000 STB LEXIS 8, 2000 WL 1125904, at *6; *See also United States v. Baltimore & O. R. Co.*, 333 U.S. 169, 177−78 (1948) (finding that parties may not enter into trackage rights agreements that abrogate rights and responsibilities under the statutory provisions of the Interstate Commerce Act). In *R.R. Ventures*, the STB voided a settlement agreement entered between a railroad company and a township which required the railroad company to construct a

particular type of crossings where the railway tracks would intersect with a highway. The STB found that because the settlement agreement created a condition precedent to railroad operation, it unreasonably interfered with railroad processes and the exclusive jurisdiction given to the STB. *Id.* For this reason, the STB determined that the terms of the agreement that "require construction of a grade separated crossing as a condition precedent to the restoration of rail services, are void as against public policy." *Id.* at *7.

Assuming that the 1979 Agreed Order covers the current controversy and that CSXT would otherwise be bound by it, it is void against public policy. At the time the agreement was made, it was a reasonable compromise in light of the 1966 Ordinance. However, since then, the ICCTA has gone into effect to vest exclusive jurisdiction over railroad operations to the STB and preempt state regulations that have the effect of managing economic decisions of the railroad company. For this reason, the 1979 Agreed Order which unreasonably interferes with CSXT's ability to maintain its tracks is unenforceable as against public policy.

### 3. Injunctive Relief

In its Prayer for Relief, CSXT seeks a "permanent injunction requiring that the City refrain from any enforcement of the 1966 Ordinance or the 1979 Agreed Order or the undertaking of any other municipal or state law action which would seek to prevent CSXT from raising the tracks on the Railroad Property or otherwise interfere with CSXT railroad operations." (Compl. at 10.) State laws that are found to be preempted should not continue to be enforced, especially when enforcement infringes upon the rights of another party. *See CSX Transp., Inc. v. Public Utilities Com.*, 901 F.2d 497 (6th Cir. 2012) (affirming Southern District of Ohio decision to enjoin enforcement of a state law that was found to be preempted). Because the 1966 Ordinance is preempted and the 1979 Agreed Order is not enforceable, CSXT is

entitled to a permanent injunction prohibiting the City from using either as a means to prevent CSXT from undertaking necessary maintenance in the manner it deems appropriate.

### III. CONCLUSION

For the reasons set forth above, the Court shall enter Judgment in favor of the Plaintiff against the Defendant. The Motion for Preliminary Injunction is denied as moot.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

May 24, 2018

cc: counsel of record